# Overseers of the Poor of Penn Township, Plffs. in Err., *v.* Overseers of the Poor of the Borough of Selinsgrove.

The settlement of an insane female pauper is ordinarily that of her father at the time of her becoming emancipated; and it is presumed to continue there unless facts which operate a change are affirmatively shown to have occurred.

(Decided May 17, 1886.)

Error to the Quarter Sessions of Snyder County to review a judgment affirming the removal of a pauper to Penn Township. Affirmed.

The facts as found by the court below, and the opinion deliv- ered therein by BOUCHER, P. J., are as follows:

---

Cited in Juniata County v. Mifflintown, 22 Pa. Super. Ct. 187, 193.

NOTE.—For the settlement of poor persons unemancipated, or incapable of self-support, see note to Poor District v. Poor District, 6 Sad. Rep. 536.

1. The name of the pauper is Sarah Jane Hoffman. She is the daughter of Charles Hoffman, and was born in Penn township, Union county, now Snyder county, on May 18, 1854. Both she and her father had a settlement in Penn township aforesaid on the 9th day of March, 1883. On that day the father made complaint on oath, before two justices of the county, "that a certain child of his, by name Sarah Jane, is not well and is unmasterly in his household, and he is not able to support her any longer; and that, under these circumstances, he requests help from some other source, in order to relieve him from his distressed condition."

Whereupon, the said justices issued an order of maintenance, directed to the overseers of Penn township. At this time the daughter was upwards of twenty-eight years of age and had always been a member of her father's family. Indeed, the evidence is that she was insane since she attained the age of nine years, and this explains the expression, "Sarah Jane is not well and is unmasterly," used by the father in his complaint before the justices.

2. The order of relief was delivered by the father to the overseers of Penn township, in March, 1883, a few days after it was issued; and they accepted the daughter as a pauper, and in the same month and year placed her in the insane asylum at Danville, at the expense of the township, where she remained until October, 1883. On September 9, 1883, while the pauper was being maintained in the asylum by the township, the overseers of the poor entered into a written contract with the father, by which the latter agreed to bring her from the asylum and return her there if necessary, and find all necessary medicines at his own expense; the overseers of the poor to pay any resident physician employed by the father for medical attendance rendered the pauper for the insanity by reason of which she was removed to the asylum, and reserving the right on the part of the overseers of the poor to return the pauper to the asylum at any time, if they considered this less expensive than to pay the physician's charges aforesaid.

There was a stipulation in this contract that it should not continue longer than until April 1, 1884. The evidence is that

this was inserted because the term of office of one of the over-seers of the poor would expire then; but it was said at the time that a new agreement could be made after that with the new overseers, or the father could make a new agreement with them.

3. In the month of October, 1883, a few weeks after this agreement was made, the pauper was taken from the asylum and again became an inmate of the father's family. The father had bought a house and lot in Selinsgrove almost one year before he entered into this agreement with the overseers of the poor, and his intention then was to remove into the new house. The conveyance for this property was given in evidence; but neither the deed itself nor a copy thereof is attached to the depositions. In March, 1884, the father removed from Penn township to this house and lot, which he had purchased at Selinsgrove, taking with him his pauper daughter as a part of his family. They resided on that property from March, 1884, until July 25, 1885, more than one whole year, when the daughter became charge-able.

4. The overseers of Penn townshrip did furnish relief to the pauper, from the time of her return from the asylum in October, 1883, during her residence in Penn township as well as while she was residing with her father in Selinsgrove, from March, 1884, until near the time when she became chargeable there.

[5. We find as a fact that Sarah Jane Hoffman was a pauper in Penn township when she was taken to Selinsgrove, and that this relation was not broken or disturbed at the time she became chargeable on Selinsgrove in July, 1885.]

The contention of the appellees on these facts is that Daniel Hoffman, the father, acquired a settlement in Selinsgrove by vir-tue of his ownership of a freehold estate situate therein and dwelling thereon one whole year, and that the settlement thus obtained by him was cast upon the daughter, so that her settle-ment is in Selinsgrove. We have before adverted to the fact that neither the conveyance for the Selinsgrove property to the father, given in evidence, nor a copy thereof, is attached to the deposi-tions. Therefore, we are unable to say from an inspection of the conveyance whether it gave the father a freehold estate or not. However, it seemed to be conceded at the argument that

such was the fact, and we therefore treat the conveyance as if it carried a freehold, whereby the father became seised of a freehold estate.

Now, our statute provides that a settlement may be gained in any district by any person who shall become seised of any freehold estate within the district, and who shall dwell upon the same one whole year. Notwithstanding this, the appellants insist that the father acquired no settlement in Selinsgrove because his daughter (for whose support he was liable while he was acquiring a settlement, by virtue of his residence on his freehold in Selinsgrove) was a pauper in Penn township, and the township assisted him in maintaining her.

In short, it is urged that the father could not have maintained himself and family in Selinsgrove had it not been for the aid furnished him by Penn township in relieving him, in part at least, from the burden of supporting the pauper in dispute, and that, therefore, he is not within the spirit and intention of the statute so as to enable him to acquire a settlement in Selinsgrove.

The law in Massachusetts and other eastern states undoubtedly is, as is said by Mr. Justice ELWELL in Scranton Poor District v. Danville, 106 Pa. 449, that while a man is receiving relief as a pauper he cannot gain a settlement anywhere, and that relief afforded to a member of his family for whose support he is liable is, as a rule, aid to him. On the 29th of April, 1879, we filed an opinion in the case of Lewisburg v. Milton, deciding the very question that the learned judge says was never decided in this state. In the opinion then filed we, *inter alia,* said: ["We simply hold that a pauper who is chargeable and receiving aid from one district cannot acquire a settlement in another, so long as this relationship exists. His name must be stricken from the poor books before he can acquire a settlement elsewhere." This opinion was affirmed in the supreme court.

It is undeniable, then, that our supreme court has decided that a pauper settled in one district and receiving aid from it is incapable of acquiring a settlement in another district so long as this relationship exists.] The existence of this case was certainly unknown to Judge ELWELL when he decided Scranton Poor

District v. Danville, 106 Pa. 449, and it does not appear from the report of that case that it was brought to the attention of the supreme court on the argument. Had it been produced before the supreme court, the result might have been different, but it was not.

The principle involved in Lewisburg v. Milton has since been followed in Brady Twp. v. Clinton Twp. 1 Pa. Co. Ct. 127, by Judge CUMMIN, in which he distinguishes it from Scranton Poor Dist. v. Danville. We cannot believe that the supreme court intended to overthrow Lewisburg v. Milton. If this had been the purpose it would have been an easy matter to say so. While it is difficult to distinguish clearly a difference in the principle which should govern both cases, yet there is a difference in the facts. In the case decided by myself, Alpheus Wertz was a pauper himself. In Scranton Poor Dist. v. Danville, Jerry Coats was not a pauper himself, but his wife was, and he was permitted to acquire a new settlement and communicate it to her, although she was fastened on the old while he was acquiring the new settlement. [The reasons for excluding a pauper in one district from acquiring a settlement in another while this relationship continues are so satisfactory to our mind that we are constrained to hold that such is the law until the supreme court plainly decides otherwise.]

Then, applying the principle laid down in Scranton Poor Dist. v. Danville, 106 Pa. 449, to the case in hand, we must reach the conclusion that Charles Hoffman, the father of the pauper, acquired a settlement in Selinsgrove because he was not a pauper himself when he went there to reside on his freehold estate. The contention of the appellees is that this settlement was communicated to the pauper daughter because she was insane and part of his family, and had not acquired a settlement elsewhere in her own right and had not been emancipated.

In support of this appellees rely upon Washington v. Beaver, 3 Watts & S. 548; Shippen v. Gaines, 17 Pa. 38, and kindred cases.

These established that children are not to be considered emancipated at the age of twenty-one years, who are compelled to remain longer with their parents on account of some infirmity of

body or mind, which renders them incapable of taking care of themselves. In the case in hand this relationship was disrupted at the time when both the father and daughter had settlement in Penn township, by the father placing her upon that township in the sole charge of the overseers of the poor, who removed her from the control of her father and confined her in the insane asylum at Danville. This was in March, 1883, and she was then upwards of twenty-eight years of age. She remained separated from her father about seven months; then, with the consent of the overseers of the poor, as established by their written agreement above recited, she was permitted to return to her father's house, not absolutely free from their control, but subject to be returned to the asylum at their pleasure, if they found it cheaper to maintain her there. Notwithstanding this return to her father's house she still remained a pauper on the township, and the township was bound to maintain her; the only difference being that, with the aid of her father, it cost the township less to maintain her there than at the hospital. We find from the evidence, too, that this was the inducing cause that prompted the agreement and brought about her return.

It was distinctly decided in Washington Twp. v. East Franklin Twp. 3 Pennyp. 107, that, where a female child, living with her father, became insane at the age of eighteen years, and at the age of twenty-three was charged as a pauper on the township in which he then lived, his subsequent removal to another township does not affect her status as a pauper, nor make her chargeable upon the township to which he removed, and in which he acquired a new settlement. The only difference in the facts of that case and the one in hand is, that there the pauper did not accompany the father to the new district where he acquired the settlement, while in our case she did not go with him.

The decision in that case must rest upon the ground that the separation of father and daughter, by her removal from his house as a pauper, was equivalent to emancipation. We see no other ground upon which it can stand. It is the settled law, both in England and in this country, that if the child, although more than twenty-one years old, has not been emancipated or obtained a settlement of its own, it can require a derivative set-

tlement from the father, obtained in a new district, although it may never have set foot in the new district.

[Thus, we see the fact that the daughter accompanied the father to Selinsgrove can have no weight in the solution of the question before us. If he had allowed her to remain in Penn township and had paid her board there, and the overseers of the poor had found the medical attendance for her there as they did in Selinsgrove, her right to a settlement in Selinsgrove derivatively through her father would have been just as complete as if she had accompanied him there. Residence is not necessary to acquire a derivative settlement. The vice in the contention of the appellees is this: The separation of the daughter from her father—she having been adjudged a pauper —was equivalent to emancipation, and she cannot acquire a derivative settlement through him in Selinsgrove. She cannot be regarded as a part of her father's family in Selinsgrove because she was not dependent upon him alone for support; but the township, too, was bound to maintain her and did assist him in so doing. The truth is, she was a pauper while with him, and her status was the same as when she was first placed upon the township of Penn. While she remained a pauper, she was incapable of acquiring a new settlement.]

The order of the justices is confirmed, and it is further ordered that the overseers of the poor of the township of Penn pay to the overseers of the poor of the borough of Selinsgrove the costs, together with their reasonable expenses incurred in behalf of the pauper.

The overseers of Penn township took this writ, assigning for error the action of the court as indicated by the above brackets.

*Charles S. Wolfe* and *Charles P. Ulrich,* for plaintiffs in error.—In Scranton Poor Dist. v. Danville, 106 Pa. 446, it was decided that a husband whose wife was a charge on a poor district in which he had a settlement at the time of her becoming such charge might, notwithstanding that fact, acquire a new settlement; and that his wife, notwithstanding the fact that she was a pauper, would derive from the husband the new settlement ac-

quired by him. If so in the case of husband and wife, why not so in the case of father and minor child.

The insane child, of whatever age, stands in the same position as to emancipation as the minor child. Shippen v. Gaines, 17 Pa. 38; Washington v. Beaver, 3 Watts & S. 548.

A removal to an insane hospital that wholly and permanently excludes parental control, without any return to or becoming, part of the family, as in the case of Sarah Jane Neal, in Washington Twp. v. East Franklin Twp. 3 Pennyp. 107, works an emancipation, as decided in that case.

In Montoursville v. Fairfield Twp. 112 Pa. 99, 2 Cent. Rep. 592, 3 Atl. 862, it is said: The daughter was then twenty-four years of age, and at twenty-one years of age she became emancipated by the rule laid down in Washington v. Beaver, 3 Watts & S. 548; Lewis v. Turbut, 15 Pa. 145. This rule, however, is not held to be true where the child is of unsound mind upon arrival at majority.

In Washington v. Beaver, above cited, the supreme court says a child is not emancipated so as to lose the benefit of any settlement which his father may gain, until twenty-one or marriage, or until he has gained a settlement in his own right, or until he has contracted a relation inconsistent with the idea of being part of his father's family.

In 4 Burn, Justice of Peace & Parish Officer, by Chitty, 26th ed. title, *Poor,* 3, *Of Emancipation,* pp. 292, 293, it is laid down as follows: "A child will follow each newly acquired settlement of his parents, so long as he continues a member of the family; that is, until he is emancipated, and no longer." See Rex v. Wilmington, 5 Barn. & Ald. 525; Rex v. Roach, 6 T. R. 247.

It is the "arrival of the time when, in estimation of law, the child wants no further protection from the father" (Rex v. Roach, 6 T. R. 247), whether infancy, idiocy, or lunacy creates the necessity for such protection. Washington v. Beaver, 3 Watts & S. 548; Upton v. Northbridge, 15 Mass. 237; Rex v. Much Cowarne, 2 Barn. & Ad. 861.

One who is *non compos mentis,* not having estate sufficient to give him a settlement in virtue thereof, follows the settlement of

his father, as well after he comes to age as before. Upton v. Northbridge, 15 Mass. 237.

*A. C. & F. S. Simpson,* for defendants in error.—The case of Scranton Poor District v. Danville may stand as an authority for such persons whose status has not been fixed, and who cannot be and have not been emancipated, without overturning the case of Washington Twp. v. East Franklin Twp. 3 Pennyp. 107 ; Brady Twp. v. Clinton Twp. 1 Pa. Co. Ct. 127.

The law applicable to the one case is not applicable to the other class of cases.

A person who has become chargeable to, and is being relieved as a pauper by, one district cannot, while so chargeable, acquire a new settlement in another district. Lewisburg v. Milton, No. 202 May Term, 1879. See also East Sudbury v. Waltham, 13 Mass. 460; East Sudbury v. Sudbury, 12 Pick. 1; Brewster v. Dennis, 21 Pick. 233 ; West Newbury v. Bradford, 3 Met. 428 ; Taunton v. Middleborough, 12 Met. 35 ; Oakham v. Sutton, 13 Met. 192 ; Garland v. Dover, 19 Me. 441 ; Croydon v. Sullivan County, 47 N. H. 179 ; Wilmington v. Somerset, 35 Vt. 232.

PER CURIAM:

The facts found by the court below show that the pauper became emancipated from her father after she arrived at full age, at the time she became a charge on Penn township. She continued to receive support from that township, although it afterwards arranged for her support in the borough of Selinsgrove. That her condition continued such that she was incompetent to acquire a settlement in said borough is clearly shown by the opinion of the learned judge. Inasmuch, then, as she had an unquestioned settlement in Penn township, when she became a charge thereon, it still continues there.

Judgment affirmed.